Peter M. Meloy, MT Bar No. 1035
MELOY LAW FIRM
P.O. Box 1241
Helena, Montana 59624
Tel: (406) 442-8670
mike@meloylawfirm.com

Abha Khanna, *pro hac vice forthcoming*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Tel: (206) 359-8000
akhanna@perkinscoie.com

*Attorneys for Proposed Intervenor-
Defendants DSCC, DCCC, and Montana
Democratic Party*

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; MONTANA REPUBLICAN STATE CENTRAL COMMITTEE,<br><br>Plaintiffs,<br><br>v.<br><br>STEPHEN BULLOCK, in his official capacity as Governor of Montana; COREY STAPLETON, in his official capacity as Secretary of State of Montana, | Case No.: 6:20-cv-00066-DLC<br><br>**BRIEF IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS** |

|   |   |
|---|---|
| Defendants, | |
| and | |
| DSCC, DCCC, and MONTANA DEMOCRATIC PARTY, | |
| Proposed Intervenor-Defendants. | |

## MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 24 and Local Rule 24.1, Proposed Intervenor-Defendants DSCC, DCCC, and Montana Democratic Party (collectively, "Proposed Intervenors") submit this memorandum of law in support of their Motion to Intervene as Defendants and respectfully request expedited consideration of the same.

## I.   INTRODUCTION

The United States is in the midst of an unprecedented public health crisis; Montana is no exception. The highly contagious coronavirus has fundamentally altered Montanans' daily lives—including how they vote. Recognizing that the novel coronavirus will impact the November 3, 2020 general election (the "November Election"), and prompted by local election officials from both political parties, who successfully implemented mail voting during the June primary election, Defendant Stephen Bullock, the Governor of Montana (the "Governor"), has again

given counties the option to expand mail voting in November. In response, Plaintiffs filed this lawsuit, alleging a slew of claims in an attempt to undermine these efforts to protect Montana voters during an unprecedented public health crisis. In so doing, they pose a clear and direct threat to Proposed Intervenors' rights and legal interests.

For the reasons set forth below, Proposed Intervenors are entitled to intervene in this case as a matter of right under Federal Rule of Civil Procedure 24(a)(2). Such intervention is needed to protect the substantial and distinct legal interests of Proposed Intervenors, which will otherwise be inadequately represented in this litigation. In the alternative, Proposed Intervenors should be granted permissive intervention pursuant to Rule 24(b). In accordance with Rule 24(c), a Proposed Answer is attached as Exhibit 1.

Proposed Intervenors also respectfully request that the Court enter an expedited briefing schedule on this Motion.

## II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY

In response to a growing public health crisis, the Governor declared a state of emergency on March 12, 2020. *See* Complaint, ECF No. 1, ¶ 75. On August 6, in an effort to both protect and assist voters during the ongoing pandemic, the Governor issued a directive allowing counties to opt in to a primarily vote by mail system for the November Election (the "Election Directive"). *Id.* ¶¶ 87–89.

The Election Directive follows earlier directives "for expanded mail-in and

early voting for school district elections and the June 2020 primary election," which "[c]ounty election administrators adeptly managed" and resulted in "an increase in voter turnout compared to previous primary elections." *Directive Implementing Executive Orders 2-2020 and 3-2020 and Providing for Measures to Implement the 2020 November General Election Safely* ("Election Directive") at 1, Office of Gov. of State of Mont. (Aug. 6, 2020), https://covid19.mt.gov/Portals/223/Documents/ 2020-08-06_Directive%20-%20November%20Elections.pdf?ver=2020-08-06- 112431-693. Because "[i]t is increasingly unlikely that the pandemic will have fully abated by November such that traditional in-person voting will not pose a significant risk to public health and human safety," and given that the primary election directives "successfully maximized safety and Montanans' opportunity to vote," local election officials "formally requested that the same process be followed for the 2020 general election." *Id.* at 2; *see also* Holly Michels, *Montana Clerks Call for General Election by Mail*, Helena Indep. Rec. (July 28, 2020), https://helenair.com/news/state-and-regional/govt-and-politics/montana-clerks-call-for-general-election-by-mail/article_b88950de-3ff6-5e67-ab30-9f4d0e2e687a.html. The Election Directive "permits counties, at their local discretion, to expand access to voting by mail *and* early voting" by creating an opt in procedure for the November Election. Election Directive at 2. Specifically, the Election Directive permits counties to conduct the November Election "under the

mail ballot provisions of Title 13, Chapter 19" of the Montana Code, *id.* at 3, which requires, among other provisions, that "[a]n official ballot must be mailed to every qualified elector." Mont. Code § 13-19-106(2). Notably, because "[c]urrent law permits in-person voting during the entire voting period," "even in counties that opt for vote-by-mail, in-person voting will still be permitted." Election Directive at 2. Accordingly, the overall effect of the Election Directive is "to shift the default position from voting in person to voting by mail" for the November Election. *Id.* The vast majority of counties have opted in to the vote by mail system. *See* Mike Dennison, *Nearly 40 Montana Counties Opt for All-Mail Ballots for November Election*, Missoula Current (Aug. 25, 2020), https://missoulacurrent.com/government/2020/08/all-mail-ballots.

On September 2—nearly one month after the Governor issued the Election Directive—Plaintiffs filed this complaint to block Montanans' access to the ballot.

Proposed Intervenors are political organizations dedicated to representing Democratic Party voters and electing Democratic Party candidates. Proposed Intervenor DSCC is the national senatorial committee of the Democratic Party as defined by 52 U.S.C. § 30101(14). Its mission is to elect candidates of the Democratic Party to the U.S. Senate, including in Montana, and it works to accomplish its mission by making expenditures for and contributions to Democratic candidates for U.S. Senate and assisting state parties throughout the country,

including in Montana. Proposed Intervenor DCCC is the national congressional committee of the Democratic Party as defined by 52 U.S.C. § 30101(14). Its mission is to elect Democrats to Congress, including to Montana's at-large congressional seat, and it also works to accomplish its mission by making expenditures in Montana and nationwide. And Proposed Intervenor Montana Democratic Party works to accomplish its mission by educating, mobilizing, assisting, and turning out voters throughout the State. All three organizations will expend resources in Montana for the November Election, to promote their candidates and ensure that their voters can cast ballots.

## III. LEGAL STANDARD

"Rule 24 traditionally receives liberal construction in favor of applicants for intervention." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003); *accord Native Ecosystems Council v. Marten*, No. CV 18-87-M-DLC, 2018 WL 5620658, at *1 (D. Mont. Oct. 30, 2018) (noting intervention requirements "are broadly interpreted in favor of intervention" (quoting *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006))); *see also Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (review of motion to intervene "is guided primarily by practical considerations, not technical distinctions" (quoting *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001))).

Under Rule 24(a), an applicant may intervene as of right if

> (1) the motion is timely; (2) the applicant has a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties in the lawsuit.

*Native Ecosystems Council*, 2018 WL 5620658, at *1 (quoting *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011)).

Under Rule 24(b), "'the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact.' 'The decision to grant or deny this type of intervention is discretionary, subject to considerations of equity and judicial economy.'" *Ctr. for Biological Diversity v. Bernhardt*, No. 19-109-M-DLC, 2019 WL 5698963, at *1 (D. Mont. Nov. 4, 2019) (quoting Fed. R. Civ. P. 24(b)(1)(B); *Garza v. County of Los Angeles*, 918 F.2d 763, 777 (9th Cir. 1990)).

## IV.  ARGUMENT

### A.  Proposed Intervenors satisfy Rule 24(a)'s requirements for intervention as a matter of right.

Proposed Intervenors satisfy each of the four requirements of Rule 24(a).

*First*, the Motion is timely. "The timeliness of a motion to intervene depends on three criteria: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for the length of delay.'" *Ctr. for Biological Diversity*, 2019 WL 5698963, at *1 (quoting *United*

*States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002)). Here, Plaintiffs filed their complaint on September 2, 2020; this Motion follows two days later, before the Court has issued a scheduling order and before the requested deadline for responses to Plaintiffs' pending Motion for Preliminary Injunction. *See* ECF Nos. 8, 16. There has therefore been no delay, and no possible risk of prejudice to the other parties. *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997); *see also, e.g., Ctr. for Biological Diversity*, 2019 WL 5698963, at *1 (granting motion to intervene where "litigation is in a preliminary stage and the Court has not yet issued a scheduling order"); *Helena Hunters & Anglers Ass'n v. Marten*, No. CV 19-47-M-DLC, 2019 WL 4043948, at *1 (D. Mont. Aug. 27, 2019) (granting motion to intervene where "[i]n light of the early stage of these proceedings, the Court does not find that there will be prejudice to other parties or that there is any delay in the filing of [the] motion"); *Native Ecosystems Council*, 2018 WL 5620658, at *1 (granting motion to intervene filed five months after complaint where applicant had "not unreasonably delayed intervening in this case").

**Second** and **third**, Proposed Intervenors have significant protectable interests in this lawsuit that might be impaired by Plaintiffs' causes of action. "To demonstrate a significant protectable interest, an applicant must establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Citizens for Balanced Use*, 647

F.3d at 897. In assessing whether such an interest is sufficiently "impair[ed] or impede[d]," Fed. R. Civ. P. 24(a)(2), courts "look[] to the 'practical consequences' of denying intervention." *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977) (quoting *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967)); *accord Native Ecosystems Council*, 2018 WL 5620658, at *2 ("Whether an applicant for intervention as of right demonstrates sufficient interest in an action is a practical, threshold inquiry, and [n]o specific legal or equitable interest need be established." (alteration in original) (quoting *Citizens for Balanced Use*, 647 F.3d at 897)).

Plaintiffs' challenge to the Election Directive would impair Proposed Intervenors' legally protected interests. In addition to representing the interests of its voters who risk disenfranchisement, Proposed Intervenors also possess organizational interests that are threatened by this lawsuit. If Plaintiffs succeed and the State's efforts to expand mail voting for the November Election are thwarted, then Proposed Intervenors—each of which is an organization dedicated to promoting the franchise and supporting the election of Democratic Party candidates—will suffer direct injury because fewer Democratic voters will have an opportunity to vote and have their votes counted. Without expansive opportunities to vote by mail coupled with meaningful opportunities to vote in person, many Montanans will be forced to choose between risking their health to vote and participating in the November Election. The result will be far less robust turnout among Democratic

supporters. Courts have routinely concluded that such interference with a political party's electoral prospects constitutes a direct injury that satisfies Article III standing, which goes beyond the requirement needed for intervention under Rule 24(a)(2) in this case. *See, e.g., Owen v. Mulligan*, 640 F.2d 1130, 1132 (9th Cir. 1981) (holding that "the potential loss of an election" is sufficient injury to confer Article III standing); *see also Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586–87 (5th Cir. 2006) (recognizing that "harm to [] election prospects" constitutes "a concrete and particularized injury"); *cf. Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) (noting that an intervenor by right only needs "Article III standing in order to pursue relief that is different from that which is sought by a party with standing"). Indeed, Proposed Intervenor DCCC has intervened in several voting cases this cycle on this very theory. *See Issa v. Newsom*, No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (granting intervention of right to DCCC); *Republican Nat'l Comm. v. Newsom*, No. 2:20-cv-01055-MCE-CKD, slip op. at 5 (E.D. Cal. June 10, 2020), ECF No. 38 (same); *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020) (granting intervention as of right to DCCC and state party where "Plaintiffs' success on their claims would disrupt the organizational intervenors' efforts to promote the franchise and ensure the election of Democratic Party candidates").

Moreover, the disruptive and disenfranchising effects of Plaintiffs' action

would require Proposed Intervenors to divert resources to address restricted voting opportunities—another legally protected interest that is implicated by Plaintiffs' claims. *See, e.g., Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (concluding "new law injure[d] the Democratic Party by compelling the party to devote resources" that it would not have needed to devote absent the new law), *aff'd*, 553 U.S. 181 (2008); *Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (finding standing where law "require[d] Democratic organizations . . . to retool their [get-out-the-vote] strategies and divert [] resources"), *rev'd on other grounds sub nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc); *see also Issa*, 2020 WL 3074351, at *3 (granting intervention as of right because "if . . . Plaintiffs were to succeed on their claims, then the Proposed Intervenors would have to devote their limited resources to educating their members on California's current voting-by-mail system and assisting those members with the preparation of applications to vote by mail"). Accordingly, Proposed Intervenors satisfy the second and third requirements of Rule 24(a)(2).

***Fourth***, Proposed Intervenors cannot rely on the parties in this case to adequately represent their interests. To guide this inquiry, courts consider three factors:

> (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the

present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect.

*Native Ecosystems Council*, 2018 WL 5620658, at *2 (quoting *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822). "The burden is minimal and is satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Id.* (quoting *Arakaki*, 324 F.3d at 1086).

Even if Defendants have an interest in defending the Election Directive and their inherent powers as state executives, Proposed Intervenors have a different focus: ensuring that every Democratic voter in Montana has a meaningful opportunity to cast a ballot in the November Election and have that ballot counted. Courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003); *accord Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) ("[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009))). That is the case here, where Proposed Intervenors have specific interests and concerns—from their overall electoral prospects to the most efficient use of their limited resources to promote get-out-the-vote-efforts—that neither

Defendants nor any other party in this lawsuit shares. *See Paher*, 2020 WL 2042365, at *3 (granting intervention as of right where proposed intervenors "may present arguments about the need to safeguard Nevada[ns'] right to vote that are distinct from [state defendants'] arguments"); *Native Ecosystems Council*, 2018 WL 5620658, at *2 (granting intervention where applicant and defendants "share the [same] objective" but "their interests are not quite parallel," and noting that "[i]nadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public" (alteration in original) (quoting *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995))). Indeed, Defendants' inability to adequately safeguard Proposed Intervenors' interests is evidenced by the fact that Proposed Intervenors DSCC and Montana Democratic Party have been engaged in litigation with the State and Defendant Corey Stapleton, the Secretary of State of Montana (the "Secretary"), over the proper scope of Montana's election laws. *See, e.g.*, *Mont. Democratic Party v. State*, No. CDV-2020-856 (Mont. Dist. Ct. June 1, 2020); *Driscoll v. Stapleton*, No. DV 20-0408 (Mont. Dist. Ct. Mar. 13, 2020). Proposed Intervenors simply cannot rely on Montana officials—who have been and are currently their adversaries in voting rights litigation—to adequately safeguard their legally protected interests in this case. *See* Brief in Support of Emergency Motion to Intervene as Defendants at 21–23, *Davis v. Stapleton*, No. 6:20-cv-00062-DLC (D. Mont. Aug. 13, 2020),

ECF No. 9 (explaining why Proposed Intervenor Montana Democratic Party could not rely on the Secretary's representation in recent litigation).

In short, Defendants do not have sufficiently congruent interests "such that [they] will undoubtedly make all of" Proposed Intervenors' arguments. *Native Ecosystems Council*, 2018 WL 5620658, at *2 (quoting *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822). As one court recently explained under similar circumstances,

> [w]hile Defendants' arguments turn on their inherent authority as state executives and their responsibility to properly administer election laws, the Proposed Intervenors [including DCCC and state party] are concerned with ensuring their party members and the voters they represent have the opportunity to vote in the upcoming federal election, advancing their overall electoral prospects, and allocating their limited resources to inform voters about the election procedures. As a result, the parties' interests are neither "identical" nor "the same."

*Issa*, 2020 WL 3074351, at *3. Because Proposed Intervenors' particular interests are not shared by the present parties in this litigation, they cannot rely on Defendants to provide adequate representation. They have thus satisfied the four requirements for intervention as of right under Rule 24(a)(2). *See Issa*, 2020 WL 3074351, at *3–4; *Paher*, 2020 WL 2042365, at *3.

### B. Alternatively, Proposed Intervenors satisfy Rule 24(b)'s requirements for permissive intervention.

Even if this Court were to find Proposed Intervenors ineligible for intervention as of right, they easily satisfy the requirements for permissive intervention under

Rule 24(b), which provides the Court with

> broad discretion to allow permissive intervention .... when 'an applicant's claim or defense and the main action have a question of law or fact in common.' Courts should also consider the timeliness or the motion and whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

*All. for Wild Rockies v. Kimbell*, No. CV 06-63-M-DWM, 2006 WL 8430428, at *1 (D. Mont. Aug. 7, 2006) (citation omitted) (quoting *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002)).

For the reasons discussed in Part I.A *supra*, Proposed Intervenors' Motion is timely. Proposed Intervenors also have defenses to Plaintiffs' claims that share common questions of law and fact—for example, whether Plaintiffs have stated a claim upon which relief can be granted. *See generally* Ex. 1. And significantly, intervention will result in neither prejudice nor undue delay. Proposed Intervenors have an undeniable interest in a swift resolution of this action to ensure that the Election Directive is timely implemented to allow every eligible Montanan to cast a ballot—and have that ballot counted—in the November Election. Indeed, Proposed Intervenors contend that *this action itself* threatens to cause harmful delays that could stymie state and local officials' efforts to facilitate mail voting. Proposed Intervenors therefore have a strong interest in defending the Election Directive and opposing Plaintiffs' lawsuit. Given the legal and factual shortcomings of Plaintiffs' claims, Proposed Intervenors are confident that their intervention in this case, and the filings

that will follow, will facilitate, rather than undermine, prompt resolution of this litigation.

> C. **An expedited ruling on this Motion to Intervene is appropriate so that Proposed Intervenors can oppose Plaintiffs' Motion for Preliminary Injunction.**

Proposed Intervenors believe that expeditious consideration of this Motion would serve judicial efficiency and ensure that they are able to protect their rights and interests. Accordingly, Proposed Intervenors respectfully request that this Motion be expedited to allow them to oppose Plaintiffs' pending Motion for Preliminary Injunction, for which Plaintiffs are seeking expedited consideration. *See* ECF No. 16.

## V. CONCLUSION

For the reasons stated above, Proposed Intervenors respectfully request that the Court grant their Motion to Intervene as Defendants as a matter of right under Rule 24(a)(2) or, in the alternative, permit them to intervene under Rule 24(b).

*Brief in Support of Motion to Intervene as Defendants*—16

DATED this 4th day of September, 2020

By: /s/ Peter M. Meloy
Peter M. Meloy
MELOY LAW FIRM
P.O. Box 1241
Helena, Montana 59624
Tel: (406) 442-8670
mike@meloylawfirm.com

Abha Khanna*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Tel: (206) 359-8000
akhanna@perkinscoie.com

*Attorneys for Proposed Intervenor-Defendants DSCC, DCCC, and Montana Democratic Party*

*Pro hac vice application forthcoming*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(d)(2)(E) of the Montana Federal Local Rules of Procedure, I certify that the foregoing Brief in Support of Motion to Intervene as Defendants is printed with a proportionately spaced Times New Roman typeface of 14 points and is double-spaced, and that the word count calculated by Microsoft Word is 3,372, excluding the caption and certificates of service and compliance.

DATED this 4th day of September, 2020

By: _____
Peter M. Meloy
MELOY LAW FIRM
P.O. Box 1241
Helena, Montana 59624
Tel: (406) 442-8670
mike@meloylawfirm.com

Abha Khanna*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Tel: (206) 359-8000
akhanna@perkinscoie.com

*Attorneys for Proposed Intervenor-Defendants DSCC, DCCC, and Montana Democratic Party*

*Pro hac vice application forthcoming